## BROOKLYN CHURCH SOCIETY OF METHODIST EPISCOPAL CHURCH v. BROOKLYN FREE KINDERGARTEN SOCIETY.

(Supreme Court, Trial Term, Kings County.   December 31, 1914.)

1. CHARITIES ☞30—DURATION OF RIGHT—"GENERAL."
    Where a grantee agreed that the grantor might erect upon the premises a building for a kindergarten school, which the grantee would maintain, heat, and clean, and that defendant should have the use thereof until the system of kindergarten teaching should generally be adopted as a part of the public school system of the city of Brooklyn, the installation of kindergarten departments in over 75 per cent. of the elementary schools of the borough of Brooklyn, which succeeded the city of that name, shows a general adoption of the kindergarten teaching; the term "general" being used as equivalent to common, and not universal.

    [Ed. Note.—For other cases, see Charities, Cent. Dig. § 61;   Dec. Dig. ☞30.

    For other definitions, see Words and Phrases, First and Second Series, General.]

2. CHARITIES ☞48—SALE OF PROPERTY—AGREEMENTS REGULATING USE.
    Land was conveyed for charitable uses, and the donor and donee agreed that the donor might, at any time before sale of the premises, erect a building to be used as a kindergarten school and cared for by the donee, and that defendant should have the use of the building, subject to sale, until a system of kindergartens was generally adopted and used as a part of the public school system in the locality.   The agreement also declared that if the buildings and grounds became unsuitable for the purpose stated, or the donee should deem it for its best interest to sell and dispose of the same, it might do so free and clear from any interest, provided that the donee should receive and invest the proceeds in other lands to be used for the same purposes, and that nothing should allow the donee to make any change in the use of the property for or during the 25 years

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

next after conveyance. *Held*, that under the agreement the donee could sell and dispose of the whole premises, free from any claims, but was bound to reinvest the proceeds and use them for a similar charity, and defendant, unless the system of kindergarten teaching was generally adopted, was for at least 25 years entitled to insist on its right to use the building erected for a kindergarten school, but in case of general adoption of that system of teaching before the expiration of 25 years defendant's right to use the building is lost.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 78, 81, 104, 106; Dec. Dig. ☞48.]

3. CHARITIES ☞50—DAMAGES FOR WITHHOLDING PROPERTY.

Where defendant withheld property devoted to a charitable use from plaintiff, who was entitled to the property, plaintiff was not, in ejectment, entitled to recover the value of the use and occupation of the premises, but should be given only nominal damages, as it could not have rented them for ordinary purposes and could have used them only for the prescribed charitable purpose.

[Ed. Note.—For other cases, see Charities, Cent. Dig. §§ 96–99; Dec. Dig. ☞50.]

Ejectment by the Brooklyn Church Society of the Methodist Episcopal Church against the Brooklyn Free Kindergarten Society. Verdict for plaintiff.

Cornell, Lockwood & Jeffery, of New York City (John L. Lockwood, of New York City, of counsel), for plaintiff.

Frederick White Shepard, of New York City (Ernest C. Brower, of Brooklyn, of counsel), for defendant.

MADDOX, J. The conveyance to plaintiff of the premises described in the complaint was a gift from the grantor in memory of her then deceased husband, and the subject of the gift was to be known as the "Hans S. Christian Memorial." So far as appears from the deed, the grant was not subject to any condition, and there is no forfeiture clause, nor any provision for re-entry for breach of condition. There is no reservation in the grantor of any part of or any right in the land conveyed, and nothing is excepted from the subject of the grant. It is the usual short form of warranty deed, with a covenant against grantor's acts. Contemporaneously with and bearing the same date as said deed, an agreement between plaintiff and its grantor, Mrs. Christian, was entered into. That agreement had reference to the use of the premises so conveyed. The original of said agreement is lost, but the copy in evidence and the fact of its execution were established by secondary proof. Indeed, in the minutes of a meeting of the board of managers of the plaintiff society, held on March 27, 1897, a copy of said agreement is spread at length. The purpose of the gift was for charitable uses, and the deed and agreement must be read together and construed accordingly.

From a recital in said agreement it appears that the buildings upon said premises were, until the same be sold or otherwise disposed of, as therein provided, to be used as a deaconess home of the plaintiff society. Said agreement then provides that the donor of said gift might, at any time thereafter, but before such sale or other disposition of said premises, erect upon a portion of said premises a building

for a kindergarten school, which building is "to be under the charge, care, and management" of the plaintiff society, which society shall maintain, heat, and clean the same. The Brooklyn Kindergarten Society is to have the use of such building, subject to the sale or other disposition of said premises as before referred to, "until the system of kindergarten teaching shall be generally adopted and used as a part of the public school system of the city of Brooklyn, unless said premises shall sooner be sold or otherwise disposed of by" the plaintiff society "as therein provided." It also provides that if the buildings and grounds, or any part thereof, become unsuitable for the purpose stated, or for any other reason it should seem to the donee for its best interest to sell and dispose of the same, or any part thereof, that said donee is expressly authorized to sell and convey the same, or any part thereof, "wholly free and clear from any * * * claim or interest whatsoever, whether legal or equitable, * * * arising from" said agreement or any of the provisions thereof: Provided, however, that the donee will receive and reinvest the proceeds of such sale "in some other piece or parcel of land in the city of Brooklyn, which shall bear the same name and designation, to wit, the Hans S. Christian Memorial, and shall be used for the same purpose or for such other charitable or benevolent purposes as may seem to the trustees of the plaintiff society most advisable and best calculated to carry out the purposes of the" donor in perpetuating "the memory of said Hans S. Christian." There then follows a concluding clause, which provides:

"Nothing herein contained shall permit the party of the first part to make any change in the use of said property or proceeds for or during the 25 years next ensuing the date hereof, except as hereinbefore provided."

[1, 2] Thus we find that the plaintiff took and holds the fee of the property, in trust, however, for the charitable uses and purposes so indicated. Such building was thereupon erected by the donor. It has been maintained, heated, and cleaned by the plaintiff, and has been used, in part, by the defendant for the purpose of conducting a kindergarten school, for which purpose the donor had previously given defendant $10,000. Defendant is still occupying the same for such purpose. In December, 1910, plaintiff demanded from defendant the possession of the part of said building so "kept and reserved" for and occupied by it for the purpose of a kindergarten school, claiming that "the system of kindergarten teaching" had theretofore been "generally adopted and used as a part of the public school system of the city of Brooklyn."

In 1897 the city of Brooklyn embraced all of Kings county within its municipal bounds, and by reason of the consolidation of the various municipal corporations in the Greater New York the city of Brooklyn became the borough of Brooklyn therein, covering the same territory within the former city of Brooklyn. The adoption of the kindergarten system and its use in the public school system of the city of Brooklyn contemplated the territory, then included within the former city. The change from its entity and identity as a separate city to that of one of the boroughs of the greater city does not in any wise affect the rights of the parties to the action. There is still the same public school sys-

tem, though that system is now controlled by and under the supervision of a department of the greater city, the board of education.

The main question is: Was the kindergarten system of teaching in December, 1910, "generally adopted and used" as a part of the public school system of the "borough"—formerly city—"of Brooklyn"? We here have the past tense of the active verbs "adopt" and "use" modified by the adverb of degree "generally." Defendant's counsel urges that the expression "generally adopted and used" imports a universal use .in all the elementary schools in the territory indicated. To this claim the court cannot give assent. The expression "until generally adopted and used" contemplates a time when that system is commonly adopted and used; that is, in common use in the public schools of Brooklyn. Upon consolidation (1898), the board of education was given and still has power to establish kindergarten classes (Charter of 1897, § 1093; Charters of 1901 and 1906, § 1069), and the maintenance of such classes has been and is provided for (1897 Charter, §§ 1065 [subd. 2] 1112; 1901 and 1906 Charters, §§ 1056, 1088). In December, 1897, there were in the then city of Brooklyn 120 elementary schools in the public school system, in 14 of which were provisions for kindergarten teaching, with an attendance of 574 children; while in December, 1910, there were 166 elementary schools in the borough of Brooklyn, in 124 of which was the kindergarten system taught, with an attendance of 12,473 children; and it was also shown on the trial that all school buildings erected in Brooklyn since 1910 have, by direction of the board, facilities for kindergarten instruction. It certainly cannot be claimed that kindergarten instruction in the high, manual training, commercial, and vocational schools is contemplated by the clause in question. That refers, necessarily, to the elementary schools in the borough, and we find that of those maintained in Brooklyn in 1910 nearly 75 per cent. afforded kindergarten instruction. Consequently it can, I take it, be said that such instruction was then commonly—that is, was generally—adopted and used (i. e., afforded), in the public school system of Brooklyn.

The contention of defendant's counsel that the provision in the agreement in question forbidding the plaintiff "to make any change in the use of such property or proceeds for or during the twenty-five years next ensuing the date" thereof, except as thereinbefore provided, of itself measures the period of time during which the defendant may use said building for the purpose of kindergarten instruction is untenable. Other than as above stated, the agreement is not difficult of interpretation. It is as follows:

(1) Plaintiff may sell and dispose of the whole premises if the "buildings and grounds," or any part thereof, should become unsuitable for the purposes contemplated by the agreement, "or it should for any other reason seem * * * for its best interest to sell and dispose of said premises or any part thereof." In that event plaintiff may sell, but must receive and reinvest the proceeds for the same purpose, or, if those purposes and uses are satisfied, then for such other charitable or benevolent purposes as may seem to plaintiff's trustees most advisable and best calculated to carry out the donor's purpose of perpetuating the memory of her husband.

(2) Meanwhile, and until the system of kindergarten teaching shall be generally adopted and used in the public school system as before stated, the defendant is to have the use of the building so erected for a kindergarten school. When that system is so adopted and used, the tenure of defendant's right of possession and occupancy of the building referred to ends and terminates, whether the plaintiff has sold and disposed of said premises or not.

(3) If, however, such kindergarten system is not so adopted and used as aforesaid, then the plaintiff shall permit the defendant's use of said building, or its participation in the proceeds of such sale, if one is had, during the period of 25 years ensuing the date of such agreement. The premises have not been sold by plaintiff, but defendant's tenure and right of possession has terminated, and was at an end prior to the commencement of this action.

[3] Plaintiff also seeks judgment for damages, including the value of the use and occupation of the premises occupied and used by defendant from January 20, 1911, for the withholding of said property. As said before, the grant was for charitable uses; it was not for financial gain. The premises granted to plaintiff have been put to charitable uses, and if defendant had vacated at the time the demand was made, then the use of the premises would have been limited to the purposes of the Deaconess Home. Plaintiff had no right to rent said premises, or any part thereof; and if the home suffered damage because of such withholding the elements and the quantum of such damage have not been shown. Because of the charitable character of plaintiff's possession and the manner of its holding said premises, the usable value of surrounding property for tenement, residential, mercantile, or manufacturing purposes afford no reasonable or reliable basis for the ascertainment of the value of the use and occupation of the part of the building put to kindergarten teaching by the defendant. After a careful consideration of the whole case, plaintiff should, on the case as made, be awarded for such withholding nominal damages only.

The defendant's motion for a direction of a verdict in its favor is denied, with an exception to defendant. Plaintiff's motion for a direction of a verdict is granted, with 6 cents damages, and an exception to defendant shall be noted. The verdict so directed shall be that the plaintiff is now the owner of the fee of the premises, the possession of which is here sought, but in trust for the maintenance of the Deaconess Home of the plaintiff society, or for such other charitable or benevolent purposes as may seem to plaintiff's trustees most advisable and best calculated to carry out the purpose of perpetuating the memory of Hans S. Christian, and to be known as the "Hans S. Christian Memorial."